SCHAUMBURG STATE BANK, as Trustee, *et al.*, Plaintiffs-Appellants, v. BANK OF WHEATON, as Trustee, *et al.*, Defendants-Appellees.

Second District   No. 2—89—0691

Opinion filed May 16, 1990.

714

Arnold B. Kalnitz and William J. Juneau, both of Chicago, for appellants.

R. Terrence Kalina, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Schaumburg State Bank, as trustee, and Richard S. Ochwat, filed an action to quiet title in the circuit court of Du Page County pertaining to their one-eighth undivided interest in the common elements of the Mona Kea Condominiums (Mona Kea). Plaintiffs claimed that a purported easement on the common elements of the condominium property constituted a cloud on their title thereto. After conducting a bench trial, the trial court entered judgment in favor of defendants, and plaintiffs now appeal. At issue on appeal is whether Mona Kea's board of managers (the board) had the authority to grant an easement over the common elements of the property to a third party.

On June 1, 1973, defendants Douglas L. Mains and Douglas B. Mains owned a parcel of real estate in Du Page County known as the Mona Kea Professional Park. On this date, the Mainses recorded a declaration of condominium ownership (the declaration) designating

the property as a condominium pursuant to the Condominium Property Act (the Act) (Ill. Rev. Stat. 1973, ch. 30, par. 301 *et seq.*). The declaration stated that there were eight units in the condominium, and, appurtenant to each, the unit owner would also own a one-eighth undivided interest in the condominium's common elements. The terms used in the declaration were to be interpreted in consonance with the correlative terms in the Act.

The declaration stated that the "percentages of common ownership appurtenant to each unit have been computed in accordance with the Act and are declared to be permanent in character and cannot be altered without the consent of all unit owners affected *** as expressed in an amended Declaration." Furthermore, the declaration provided that the "common elements shall not be divided nor shall any right to partition any thereof exist." The declaration also provided that, "[e]xcept for alteration in the common interest which cannot be done except with the consent of all unit owners," the declaration could be amended by a vote of two-thirds of the unit owners. Such amendments were to be "effective when recorded." The only aspect of the physical layout of the condominium property relevant here is that portion of the common elements which served as a driveway providing access to the units. The driveway was accessible at its western terminus from Schmale Road.

On July 31, 1973, plaintiff Schaumburg State Bank (Schaumburg) was deeded title to unit three in Mona Kea. Schaumburg held title to unit three as trustee under trust No. 366 for two beneficiaries, Glenn S. Schweitzer and Richard S. Ochwat. Schweitzer subsequently transferred his beneficial interest in unit three to Ochwat, who is also a plaintiff in the instant action. In December 1976, Schaumburg owned one Mona Kea unit, and the Gary-Wheaton Bank (Gary-Wheaton) held title to another unit in trust for defendants Ronald Severino, Donald Gustafson, Richard Neidballa and James Grissom under trust No. 1907. Title to the remaining six Mona Kea units was held in trust by the Bank of Wheaton for the Mainses under trust No. 2386.

On December 14, 1976, a special meeting of the Mona Kea unit owners was held to consider a proposed amendment to the declaration. The amendment would have empowered the board to grant a perpetual easement for the ingress and egress of vehicular and pedestrian traffic over Mona Kea's common driveway to Gary-Wheaton, which owned a parcel of land adjoining Mona Kea (Gary-Wheaton parcel). In return, Gary-Wheaton would grant a similar easement over the Gary-Wheaton parcel to Mona Kea. The two easements would connect to form a continuous passageway running from Schmale Road

on the Mona Kea property to Thornhill Drive on the Gary-Wheaton parcel. Without the connecting easements, Mona Kea would not be directly accessible from Thornhill Drive. All unit owners attended the December 14 meeting, and, with only the plaintiffs voting against it, the amendment was adopted by a vote of seven unit owners to one.

On December 27, Douglas B. Mains, as president of the board, executed an agreement for the establishment of the easements with Gary-Wheaton as provided by the amendment. The agreement stated that the easements were for the "mutual and joint benefit" of both parcels of property to afford better traffic circulation to each. The agreement was recorded on January 14, 1977. The amendment to the declaration authorizing the easements was not recorded until January 17, 1977.

The instant action was filed with the circuit court on December 16, 1982. A previously filed action had been dismissed for want of prosecution on December 17, 1981. Count I alleged that the easement over Mona Kea's common elements was not valid and that Gary-Wheaton's claim to the easement constituted a cloud on plaintiffs' one-eighth undivided interest in the common elements. Count I asked the court to declare the easement void and to quiet title to the common elements. Count II sought injunctive relief, and count III sought damages in tort.

The parties filed cross-motions for summary judgment, and the trial court denied both motions. The court found that the easement upon the Mona Kea common elements constituted "an incorporeal hereditament which reduced the bundle of rights of all unit owners of the common elements." The trial court, referring to the supreme court's decision in *Murray v. Haverty* (1873), 70 Ill. 318, stated that the issue presented in the instant cause was "whether the grant and receipt of the mutual easements caused damage to the plaintiff's interest in the common elements." The court found that there was an issue of fact remaining as to whether plaintiffs' interest was damaged and thus ordered the cause to proceed to trial on this question. A hearing on the injury to plaintiffs' interest was held on June 14, 1989. The parties agreed that counts II and III of plaintiffs' complaint would be dismissed and that plaintiffs would proceed on count I only.

At the hearing, Dr. Ochwat testified that he had maintained his dentistry office at unit three of Mona Kea since 1973. Unit three is located near the intersection of the two easements. Ochwat testified that vehicle noise from the driveway area was clearly audible in his offices even before the instant easements were created. Ochwat stated that, after the creation of the easements in 1977, a drive-in

banking facility was constructed on the Gary-Wheaton parcel, and he estimated that the flow of traffic outside his office had increased about twentyfold since that time. The most troublesome result of this, Ochwat testified, was that traffic would sometimes back up in the driveway areas on those days that the bank was particularly busy, thus making access to his office from Schmale Road more difficult. Ochwat stated that the noise from this stationary traffic caused him to move his private office to the opposite side of the building and made it impossible for him to open any office windows. Ochwat testified that he and Schweitzer purchased unit three for approximately $115,000 in 1973.

Ronald W. Casper, a real estate appraiser, testified on behalf of defendants. Casper stated that a Mona Kea unit sold in 1987 for a price of approximately $240,000. The only sale prior to that one, Casper testified, occurred in 1984 for $210,000. Casper stated that, in his opinion as an experienced real estate appraiser, the granting of mutual easements in 1977 did not affect the market value of plaintiffs' property.

After listening to arguments from counsel, the trial court entered judgment in favor of defendants. Plaintiffs now appeal from the entry of judgment. On appeal, plaintiffs argue that it was not necessary to prove that their interest in Mona Kea was injured in order to maintain an action to quiet title. Plaintiffs contend that they were entitled to judgment in their favor because the easement over Mona Kea's common elements claimed by Gary-Wheaton was invalid.

■■ We initially note our agreement with plaintiffs' contention that, in this action, they need not prove an injury to their interest in order to prevail. The trial court's ruling in this regard was based on *Murray v. Haverty*, which in turn was rooted in the common-law concept of tenancy in common. It is true that the Mona Kea unit owners' undivided interest in the condominium common elements made them tenants in common with regard to the common areas. (*Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 591-92.) In Illinois, however, condominiums are creatures of statute (*S & D Service, Inc. v. 915-925 W. Schubert Condominium Association* (1985), 132 Ill. App. 3d 1019, 1024-25) which were unknown to the common law.

■ The statutorily created concept of condominium ownership contains a number of elements not known to the common-law notion of tenancy in common. For example, a condominium owner, unlike a tenant in common, can be effectively forced to sell his condominium interest if three-fourths of the unit owners vote to sell. (Ill. Rev. Stat. 1987, ch. 30, par. 315.) One court has noted that "[c]ondominium unit

owners comprise a little democratic sub society" (*Hidden Harbour Estates, Inc. v. Norman* (Fla. App. 1975), 309 So. 2d 180, 182), and another has said that "[e]ach condominium owner relinquishes some degree of freedom of choice and agrees to subordinate some of his traditional ownership rights when he elects this type of ownership experience" (*San Antonio Villa Del Sol Homeowners Association v. Miller* (Tex. App. 1988), 761 S.W.2d 460, 464). Just as a common-law tenant in common may empower a cotenant to act in his stead as an agent (see *Bachewicz v. American National Bank & Trust Co.* (1986), 111 Ill. 2d 444, 448), the condominium owner cedes some of his authority to the collective condominium ownership group. Thus, even though condominium owners are tenants in common as to the common elements, the trial court should have addressed this cause with primary reliance on the Act itself.

In reviewing the judgment entered below, however, we are not limited to the reasoning employed by the trial court. We may affirm the judgment based on any reason appearing in the record. (*Coleman v. Windy City Balloon Port, Ltd.* (1987), 160 Ill. App. 3d 408, 418.) The proper inquiry here, then, is not whether the easement at issue contravenes common-law concepts of tenancy in common, but whether the board's actions were authorized under the Act and the declaration. Viewed in this light, we believe the resolution of this appeal requires us to address two questions: (1) was the amendment to the declaration effective as to the easement granted before the amendment was recorded; and (2) even if the amendment was properly made effective, is it nonetheless void because it conflicts with the Act?

Defendants assert that the amendment to the declaration authorized the board to grant the easement over the Mona Kea common elements. According to its provisions, any amendments to the declaration were to be "effective when recorded." Moreover, the Act provides that any amendment to the declaration is not valid unless "such amendment is duly recorded." (Ill. Rev. Stat. 1975, ch. 30, par. 317.) Plaintiffs argue that the amendment authorizing the easement was not effective until the date it was recorded, January 17, 1977, and that, therefore, the December 27, 1976, agreement for the easement was made by the board without authority. Defendants contend that the sequence of recording does not affect the validity of the amendment.

In construing a statute, our role is to examine the entire statute for guidance as to the legislative intent, determine the objective the statute sought to accomplish and the evils it desired to rem-

edy, and, upon ascertaining the legislature's intent, give it effect. (*Krall v. Secretary of State* (1988), 168 Ill. App. 3d 478, 483.) The purpose of the Act's recording provision is to give persons the opportunity to ascertain the status of title to property. (*St. Francis Courts Condominium Association v. Investors Real Estate* (1982), 104 Ill. App. 3d 663, 668.) Moreover, it is presumed that statutes which relate to the same subject are governed by one spirit and a single policy and that the legislature intended the enactments to be consistent and harmonious. (*People v. Maya* (1985), 105 Ill. 2d 281, 286.) Recording statutes are designed to provide notice and generally do not protect those who already have actual notice. (See *Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 391 (persons with actual notice are not protected by section 1 of "An Act concerning constructive notice of condemnation proceedings ***" (Ill. Rev. Stat. 1979, ch. 110, par. 405)); *Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 908 n. 2 (only *bona fide* purchasers without notice are protected by section 30 of "An Act concerning conveyances" (Ill. Rev. Stat. 1975, ch. 30, par. 29)).) An unrecorded interest in land is not effective as to a *bona fide* purchaser without notice, but it remains effective between the parties. *Harms v. Sprague* (1984), 105 Ill. 2d 215, 224-25.

In the instant case, plaintiffs had actual knowledge of the amendment to the declaration adopted by the unit owners on December 14, 1976. Even though the amendment was not recorded until after the board granted the easement in question, plaintiffs' actual knowledge of the amendment under these circumstances constituted "the functional equivalent of recording" (*St. Francis*, 104 Ill. App. 3d at 669) insofar as they were concerned. Both the Act and the declaration merely require that amendment to the declaration be recorded to become effective, and the amendment was, in fact, ultimately recorded. Thus, we conclude that the amendment empowering the board to grant the easement, which was adopted by the unit owners with plaintiffs' knowledge, was effective as to plaintiffs.

This conclusion does not end our inquiry. The amendment was adopted by a vote of seven unit owners to one, but, under some circumstances, a unanimous vote is required to amend a condominium declaration. The Act provides that the "percentage of ownership interest in the common elements allocated to each unit" shall not be changed except "by agreement of all unit owners." (Ill. Rev. Stat. 1975, ch. 30, par. 304(c).) The Mona Kea declaration likewise states that the "percentages of common ownership appurtenant to each unit *** cannot be altered without the consent of all unit owners affected." The question here, then, is whether the easement on the

Mona Kea common elements constitutes a change in the percentage of common ownership appurtenant to each unit. If so, then a unanimous vote of unit owners would have been required to effect such a change validly.

■ The grant of an easement over the Mona Kea common elements did not change the fact that plaintiffs, as owners of unit three, owned a one-eighth or 12.5% undivided interest in the condominium common elements. Plaintiffs argue that their interest in the common elements is nonetheless diluted because they now own a 12.5% undivided interest in a parcel which, as a whole, has itself been diminished by the granting of an easement over it. Our review of case law on this subject leads us to conclude that, where the percentage of common ownership appurtenant to each condominium unit remains constant, the unit owner's undivided interest in the common elements is not diminished by the grant to a third party of a nonexclusive use of, or easement over, the common areas. An individual unit owner's undivided interest would only be diminished if the use or easement was exclusive and, as a result, the unit owner was precluded from using a portion of the common elements to which he previously had access.

Two cases amply demonstrate the soundness of our conclusion. In *Stuewe v. Lauletta* (1981), 93 Ill. App. 3d 1029, a condominium developer allocated a portion of the condominium's common elements to the exclusive use of one unit owner for a parking space. Thus, a portion of what was once common to all unit owners was reserved for the use of only one. The court held that the unit owner's exclusive use of the parking space constituted a diminishment in the other unit owners' interests in the common elements. (*Stuewe*, 93 Ill. App. 3d at 1031.) Conversely, in *Parrillo v. 1300 Lake Shore Drive Condominium* (1981), 103 Ill. App. 3d 810, a condominium unit owner improved a portion of the common elements over which he already had been granted an exclusive easement. The court distinguished that case from *Stuewe*, because in *Parrillo* "the common elements available to the other unit owners would remain the same." *Parrillo*, 103 Ill. App. 3d at 814; see also *Grimes v. Moreland* (1974), 41 Ohio Misc. 69, 322 N.E.2d 699 (a taking of a common area, as opposed to a mere use thereof, constitutes a diminishment of the unit owners' undivided interests and requires a unanimous vote).

■ In the instant case, the easement over the Mona Kea common elements was not for the exclusive use of Gary-Wheaton or its customers, and all Mona Kea unit owners could utilize that portion of the common elements in the same fashion that they could have before the easement was granted. Therefore, the easement, which was executed

pursuant to a properly adopted amendment to the declaration, did not diminish plaintiffs' interest in the condominium's common elements. Accordingly, defendants were entitled to judgment in their favor.

For the above-stated reasons, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and GEIGER, J., concur.