# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Seth v. Aqua at Lakeshore East, LLC*, 2012 IL App (1st) 120438

---

| | |
|---|---|
| Appellate Court Caption | VIJAY SETH, NIRMAL SETH, SHIVA VALLABHAPURAPU-SETH, ASHEESH SETH, GURDIP SINGH, KULWINDER K. SAINI, RADHIKA REDDY, CHENNA GUNDA, SANJAY A. BHATIA, ANURADHA RAO, RAVI GUDAMEDA, MEETA YADAVA, NIRUP KRISHNAMURTHY, RICHARD PODRAZA, SUSAN PODRAZA and CASEY JAGIELNICK, Plaintiffs-Appellees, v. AQUA AT LAKESHORE EAST, LLC, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0438 |
| Filed<br>Rehearing denied | September 26, 2012<br>October 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The developer of a condominium project satisfied its obligation pursuant to plaintiffs' purchase agreements to provide plaintiffs with the "condominium documents," including the recorded condominium association declaration, by providing plaintiffs with the 61-page association declaration, since plaintiffs' actual knowledge of the unrecorded declaration was "the functional equivalent of recording" and satisfied the requirements of section 22 of the Condominium Property Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-04483; the Hon. Kathleen M. Pantle, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Katten & Temple LLP, of Chicago (Jeffrey R. Tone and Nancy A. Temple, of counsel), for appellant. |
| | Keogh Law, Ltd., of Chicago (Keith J. Keogh and Timothy J. Sostrin, of counsel), for appellees. |
| Panel | JUSTICE STEELE delivered the judgment of the court, with opinion. Presiding Justice Salone and Justice Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant, Aqua at Lakeshore East, LLC (Aqua), appeals from an order of the circuit court of Cook County granting partial summary judgment to plaintiffs, Vijay Seth, Nirmal Seth, Shiva Vallabhapurapu-Seth, Asheesh Seth, Gurdip Singh, Kulwinder K. Saini, Radhika Reddy, Chenna Gunda, Sanjay A. Bhatia, Anuradha Rao, Ravi Gudameda, Meeta Yadava, Nirup Krishnamurthy, Richard Podraza, Susan Podraza, and Casey Jagielnick (plaintiffs). The trial judge ruled plaintiffs were entitled to rescind purchase agreements related to a prospective condominium development because the developer failed to provide them with a recorded declaration. For the following reasons, we disagree, reverse the judgment, and remand the case to the circuit court for further proceedings.

¶ 2                          BACKGROUND

¶ 3      The record on appeal discloses the following facts. Aqua is the seller of condominium units plaintiffs contracted to purchase as part of a luxury real estate development located on 28 acres northeast of Millennium Park in Chicago, Illinois. The development was to include a high-end hotel, which would offer condominium residents additional amenities not available in most residential towers.

¶ 4      Plaintiffs signed their respective purchase agreements on various dates in August, September, October and December 2006, and July 2007. Plaintiffs made earnest money deposits ranging between $39,169 and $73,730, depending on the purchase price of each respective unit. The deposits were to be held in segregated, interest-bearing escrow accounts.

¶ 5      The purchase agreements state that the developer anticipated accepting title to the property in December 2006, and estimated construction would be completed on or about December 2010, although closings might occur before the latter date. The purchase agreements also provided that, prior to closing, the seller would cause to be recorded, in

accordance with the Illinois Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2006)), the declaration of condominium ownership and of easements, restrictions, covenants and bylaws for the Aqua at Lakeshore East Condominium Association (Association), as well as the plat showing the building and purchased unit at issue. The purchase agreements further required the purchasers to acknowledge receipt of the "condominium documents," which the agreement defined as: (1) the floor plan of the purchased unit; (2) a master association declaration; (3) the Association declaration, including the Association bylaws; (4) an estimated operating budget for the property and estimated monthly assessments for the Association; (5) a copy of the heating cost disclosure statement; and (6) the City of Chicago property report (Property Report) for the property.[1] The agreements then provide in part:

> "Seller reserves the right to make any changes in the Condominium Documents and Plans (as hereinafter defined) permitted by law, subject to the provisions of section 22 of the Act. To the extent that section 22 of the Act requires Purchaser's approval of certain changes in the Condominium Documents or Plans, Purchaser's sole remedy in the event of Purchaser's non-approval of such changes shall be to the rescind this Agreement within the time and in the manner provided by the Act."

Each plaintiff initialed the acknowledgment in his or her respective agreement.

¶ 6    The 61-page Association declaration provided to purchasers contained, among other things, the Association bylaws, a description of the common elements, and the percentage ownership of the common elements. The Association declaration refers several times to the plat of survey as an exhibit to the declaration. However, the plat was not included as an exhibit to the Association declaration. Instead, a preliminary plat based on architectural drawings was included in the Property Report.

¶ 7    The Property Report states that the developer planned to submit the project to the provisions of the Act by recording the declaration in the form provided as an exhibit to the report. The Property Report also states the purchases of the units were subject to the terms of the Association declaration and bylaws. The report further states the final declaration and as-built surveys had not been completed and the developer could not guarantee there would be no material changes to the units. Moreover, the report reserved the right for the developer to change the plans to include greater or fewer units than indicated in the condominium documents.

¶ 8    Aqua recorded the Association declaration with the recorder of deeds' office on September 10, 2009. The percentage ownership of the common elements is not identical to the percentages listed in the Association declarations provided to the plaintiffs in connection with their purchase agreements. The recorded declaration also includes seven units not identified in the Association declarations provided to the plaintiffs regarding their purchase agreements.

---

[1] The Chicago Municipal Code requires that developers make property reports available to prospective purchasers. Chicago Municipal Code § 13-72-50 (amended May 4, 2011). The contents of the report are also specified by ordinance. Chicago Municipal Code § 13-72-20 (amended May 4, 2011).

¶ 9 On February 2, 2010, plaintiffs filed this lawsuit against Aqua, alleging that Aqua failed to provide them with a recorded declaration. Plaintiffs also allege that on November 5, 2008, Aqua informed them that the high-end hotel had terminated its contract to purchase the lower 15 floors of the development, which plaintiffs claim would result in higher monthly assessments for condominium unit owners. Plaintiffs further allege that Aqua marketed the building as residential, but the project was legally classified as commercial, which created additional difficulties and costs for the plaintiffs. Plaintiffs seek to rescind their contracts under section 22 of the Act (765 ILCS 605/22 (West 2006)) and section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)). Plaintiffs also seek a declaratory judgment that the contracts are rescinded and allege breach of contract.

¶ 10 On January 25, 2011, plaintiffs filed a motion for partial summary judgment on count I of their complaint, which sought rescission of their contracts pursuant to section 22 of the Act (765 ILCS 605/22 (West 2006)). On March 23, 2011, Aqua filed its response and a cross-motion for partial summary judgment. On June 22, 2011, the circuit court entered a memorandum opinion and order granting partial summary judgment in favor of the plaintiffs. The trial judge ruled that section 22 of the Act required Aqua to provide plaintiffs with a copy of the recorded Association declaration, which Aqua failed to do. Accordingly, the trial judge concluded that plaintiffs were entitled to rescind their purchase agreements. The trial judge ordered Aqua to return the earnest money deposits "with interest thereon at the rate in effect for interest on judgments."

¶ 11 On July 22, 2011, Aqua moved for reconsideration. On September 2, 2011, the circuit court denied the motion for reconsideration. Aqua then moved for a clarification regarding the calculation of interest. On January 6, 2012, the circuit court ruled a 9% interest rate would apply from the date plaintiffs demanded rescission, and ordered the parties to calculate the interest due. On January 20, 2012, the court entered orders stating the amounts due the respective plaintiffs and finding no just reason to delay enforcement or appeal of the partial summary judgment, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). On February 10, 2012, Aqua filed a timely notice of appeal to this court.

¶ 12                                    DISCUSSION

¶ 13 On appeal, Aqua argues that the trial judge erred in granting partial summary judgment to the plaintiffs. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of triable fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In determining whether a question of fact exists, "a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is "a drastic means of disposing of litigation" and thus should only be awarded when the moving party's right to judgment as

-4-

a matter of law is "clear and free from doubt." *Id*. We review grants of summary judgment *de novo*. *Id*.

¶ 14 Count I of plaintiffs' complaint sought rescission of their contracts pursuant to section 22 of the Act, which provides in relevant part:

"In relation to the initial sale or offering for sale of any condominium unit, the seller must make full disclosure of, and provide copies to the prospective buyer of, the following information relative to the condominium project:

(a) the Declaration;

\* \* \*

All of the information required by this Section which is available at the time shall be furnished to the prospective buyer before execution of the contract for sale. Thereafter, no changes or amendments may be made in any of the items furnished to the prospective buyer which would materially affect the rights of the buyer or the value of the unit without obtaining the approval of at least 75% of the buyers then owning interest in the condominium. If all of the information is not available at the time of execution of the contract for sale, then the contract shall be voidable at option of the buyer at any time up until 5 days after the last item of required information is furnished to the prospective buyer, or until the closing of the sale, whichever is earlier. Failure on the part of the seller to make full disclosure as required by this Section shall entitle the buyer to rescind the contract for sale at any time before the closing of the contract and to receive a refund of all deposit moneys paid with interest thereon at the rate then in effect for interest on judgments.

A sale is not an initial sale for the purposes of this Section if there is not a bona fide transfer of the ownership and possession of the condominium unit for the purpose of occupancy of such unit as the result of the sale or if the sale was entered into for the purpose of avoiding the requirements of this Section. The buyer in the first bona fide sale of any condominium unit has the rights granted to buyers under this Section. If the buyer in any sale of a condominium unit asserts that such sale is the first bona fide sale of that unit, the seller has the burden of proving that his interest was acquired through a bona fide sale." 765 ILCS 605/22 (West 2006).

The Act defines the declaration as "the instrument by which the property is submitted to the provisions of this Act, as hereinafter provided, and such declaration as from time to time amended." 765 ILCS 605/2(a) (West 2006). Property is submitted to the provisions of the Act by recording the declaration. 765 ILCS 605/3 (West 2006).

¶ 15 Here, the trial judge ruled that section 22 of the Act required Aqua to provide plaintiffs with a copy of the recorded Association declaration, which Aqua failed to do, thereby entitling plaintiffs to rescind their contracts. On appeal, Aqua contends that section 22 does not require the developer provide a recorded declaration. Aqua argues that the definition of a declaration is ambiguous and may be construed to refer to the document that gets recorded, rather than one already recorded. Aqua also notes that the legislature was able to clearly refer to a recorded declaration in the Act's definition of "condominium instruments." 765 ILCS 605/2(*l*) (West 2006).

¶ 16 Aqua further notes that the Act's definitions apply "unless the context otherwise requires." 765 ILCS 605/2 (West 2006). Aqua maintains that if the Act defines the declaration as the recorded instrument, that definition should not apply to section 22, which Aqua claims clearly applies to projects that have not yet been built. Aqua argues that, because a declaration must be recorded with the plat, a declaration cannot be recorded until the project is built. See 765 ILCS 605/5 (West 2006). Thus, Aqua notes that the trial judge's interpretation would allow prospective buyers to rescind until the project is complete, which Aqua maintains would negatively affect financing for new condominium construction. Moreover, Aqua argues that the purpose of recording statutes is to give notice of the property's status to the world and actual notice of the declaration to prospective purchasers is "the functional equivalent of recording" for purposes of this lawsuit. See *Schaumburg State Bank v. Bank of Wheaton*, 197 Ill. App. 3d 713, 720 (1990) (unrecorded amendment of declaration effective as to plaintiffs with actual notice thereof).

¶ 17 In this case, we need not decide whether the trial judge or Aqua has the superior interpretation of the Act. Even assuming *arguendo* that section 22 of the Act refers to a recorded declaration, plaintiffs' actual knowledge of the unrecorded declaration under these circumstances constituted "the functional equivalent of recording" insofar as they were concerned. See *id*. In her order, the trial judge raised the possibility that the developer could change an unrecorded declaration at will, adversely and materially affecting a purchaser's percentage of ownership. However, section 22 of the Act expressly provides that "no changes or amendments may be made in any of the items furnished to the prospective buyer which would materially affect the rights of the buyer or the value of the unit without obtaining the approval of at least 75% of the buyers then owning interest in the condominium." 765 ILCS 605/22 (West 2006). Having provided a declaration to a prospective buyer, the developer is not free to materially alter the instrument at will.

¶ 18 Section 22 of the Act has been described as a "truth in selling" provision, directed toward providing financial information for prospective buyers and protecting them from hidden long-term condominium management agreements entered into between project development and management groups which had the same principal parties. See *Mikulecky v. Bart*, 355 Ill. App. 3d 1006, 1011 (2004). The provision of actual knowledge of an unrecorded declaration which cannot be altered other than pursuant to the Act is fully consistent with these statutory purposes. Thus, we conclude the trial judge erred in granting plaintiffs summary judgment on count I of their complaint.[2]

---

[2]Plaintiffs assert in their statement of facts that Aqua made material changes to the declaration before recording it. However, this was not the basis for the summary judgment and plaintiffs presented no argument thereon in their brief. Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) requires a clear statement of contentions with supporting citation of authorities and pages of the record relied upon. Ill-defined and insufficiently presented issues that do not satisfy the rule are considered forfeited. *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010).

¶ 19                            CONCLUSION

¶ 20        In short, we conclude that the trial judge erred in granting plaintiffs summary judgment on count I of their complaint. Plaintiffs' actual knowledge of the unrecorded declaration under these circumstances is "the functional equivalent of recording" satisfying the requirements of section 22 of the Act, even assuming *arguendo* that section requires a recorded declaration. Accordingly, for all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this opinion.

¶ 21        Reversed and remanded.